Filed 3/26/14  In re J.S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E059563 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ120269) |
| v. | O P I N I O N |
| A.R., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Tamara L. Wagner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Anna M. Marchand and Carole Nunes Fong, Deputy County Counsel, for Plaintiff and Respondent.

1

# I.  INTRODUCTION

In this juvenile dependency proceeding concerning J.S., the juvenile court terminated reunification services for defendant and appellant A.R. (Mother) and scheduled a hearing to be held pursuant to Welfare and Institutions Code section 366.26.[1] Prior to the hearing, Mother filed a request to change court order pursuant to section 388 (section 388 petition).  Specifically, Mother requested that the section 366.26 hearing be vacated and that she receive further reunification or family maintenance services.  The court denied that request, held the section 366.26 hearing, and terminated Mother's parental rights.

Mother appealed.  She contends the court erred in denying her section 388 petition.  Because we find no abuse of the court's discretion, we will affirm the order denying her request.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Background*

Mother had been involved in two juvenile dependency proceedings prior to this case.  In August 2010, three of her children were detained and placed in foster care due to medical neglect and Mother's failure to protect them from their father's substance abuse.

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The court terminated Mother's parental rights to these three children in December 2012 and they are, as of August 2013, in the process of being adopted.[2]

Mother's fourth child was born in December 2010 and soon thereafter declared a juvenile court dependent in a second proceeding. Mother's parental rights to that child were terminated in December 2011 and the child's adoption was finalized in July 2012.

J.S., the subject of this case, was born in August 2012. J.S. initially lived with his maternal grandmother while Mother lived in a shelter.

B. *Detention, Jurisdiction, and Disposition*

When J.S. was about three weeks old, plaintiff and respondent, Riverside County Department of Public Social Services (DPSS), filed a petition concerning J.S. under section 300. Under section 300, subdivision (b) (failure to protect), DPSS alleged: (1) the father's use of controlled substances; (2) Mother's abuse of methamphetamine; (3) the parents' failure to benefit from services provided in the two prior dependency proceedings; and (4) the father's inability to provide J.S. with a safe and stable living environment and his failure to provide him with adequate food, clothing, shelter, medical treatment, and protection. Under section 300, subdivision (j) (abuse of sibling), DPSS alleged that Mother's three oldest children were abused or neglected and that J.S. was at risk of similar harm.

---

[2] This court affirmed the order terminating parental rights to the three older children in *In re I.S.* (Oct. 24, 2013, E057824) [nonpub. opn.].

Following a hearing, the court detained J.S. from the parents and placed him in DPSS's custody. J.S. continued to live in the maternal grandmother's home and under her care. Mother lived for a time with a friend and later with relatives. She visited J.S. daily to breastfeed him. The father did not make himself available to DPSS.

In a report prepared for the jurisdictional/dispositional hearing, DPSS reported that both parents had a criminal history that included convictions for robbery and possession of controlled substances. DPSS concluded, however, that Mother did not have a history of known drug use. She tested negative for drugs and J.S. was born free of drugs in his system. The father, on the other hand, "ha[d] an unresolved history of abusing drugs" and had not "completed any type of substance abuse treatment." He did not make himself available to DPSS and did not appear to be making any effort to resolve the issues that led to the removal of his children.

DPSS's report included favorable comments regarding Mother. She had completed parenting and nutrition classes, and had actively and consistently participated in visits with her children. She actively participated in counseling and substance abuse treatment, and "ha[d] an evident bond with all her children." Because Mother recognized that the father had inhibited her progress, she told the social worker she had decided to terminate her relationship with him.

Following a contested jurisdictional/dispositional hearing, the court found true the allegations of the petition with the exception of the allegation that Mother had abused methamphetamine. The court declared J.S. a dependent of the court and removed him

4

from the parents' custody. Reunification services were ordered for Mother and denied to the father. J.S. continued to live with the maternal grandmother.

In December 2012, DPSS gave Mother permission to have unsupervised visits with J.S. and to care for him while the maternal grandmother went to the store. The following month, Mother was allowed to live in the maternal grandmother's home and take over primary care of J.S.

In February 2013, Mother told a social worker she had not had contact with the father for several months and did not know his whereabouts. However, social workers had "strong suspicions that [Mother] continued to be in a relationship with the father." These suspicions were based on the fact that the father would be present for visits with the parents' three older children even though DPSS had not informed him of the visits. The social worker told Mother that if the father wanted to have contact with J.S., he would need to contact the social worker to schedule visits at the social worker's office.

In March 2013, a "Team Decision Making" meeting was held during which Mother and the maternal grandmother were reminded of DPSS's concerns about the father. Mother and the maternal grandmother said they were not having contact with the father and would contact law enforcement if he showed up at their home.

C. *Six-month Review Period*

In late March 2013, DPSS filed a report for the six-month review hearing. DPSS recommended that J.S. be placed with Mother and that Mother be provided with family maintenance services. Mother "has made adequate progress in her services . . . and all

visits with [J.S.] have been appropriate. She reports she has distanced herself from the father of the children as she knows his lifestyle will prevent her from reunifying with the child and may also cause her to relapse."

The day after DPSS filed the March 2013 report, Mother and the father were arrested on felony assault charges following a physical altercation with a neighbor of the maternal grandmother. When police responded, they found Mother and the father inside the maternal grandmother's apartment. According to a police report, the victim of the assault stated that the father lives at the maternal grandmother's apartment. A son of the victim said that Mother and the father had been to the victim's apartment "a number of times to 'hang out.'" The father told the officer that during the altercation he "went into his apartment," referring to the maternal grandmother's apartment. After the fight, he "hid" there with Mother.

Mother told the police officer that the father and the victim went out together to panhandle. When the father returned to the apartments where the maternal grandmother and the victim lived, the father and the victim began fighting. The father went into the maternal grandmother's apartment, grabbed a garden hoe, and used it to hit the victim, causing the hoe to break. Mother picked up a piece of the broken hoe and hit the victim with it. She and the father then went to the maternal grandmother's apartment.

Following this incident, J.S. was removed from the maternal grandmother's home and placed in the adoptive home of his older siblings.

DPSS filed an addendum report and changed its recommendation. DPSS now sought the termination of reunification services for Mother and a section 366.26 hearing. DPSS stated that J.S. "would be at risk of abuse or neglect if he were to be placed with [Mother] as she has not been forthcoming regarding her contact with the father and minimizes the risk she placed the child in [on] the date she was arrested at the maternal grandmother's home."

At the six-month review hearing, the court terminated reunification services and set a hearing to be held under section 366.26.

D. *Section 388 Petition and Section 366.26 Hearing*

In a report prepared for the section 366.26 hearing, DPSS stated that it "is very likely" that J.S. will be adopted by his current prospective adoptive parents, who are also adopting J.S.'s three older siblings. According to the social worker, the "siblings show a very strong bond to him and are very excited that he is placed in their home." J.S. has "also appropriately bonded to the prospective adoptive parents and recognizes them immediately when he see[s] them." The prospective adoptive parents "are committed to providing [J.S.] with permanency."

In an addendum report, DPSS reported on a conversation between the father and a social worker. The father told the social worker that during the time J.S. was placed with the maternal grandmother, he saw J.S. approximately once per month. DPSS stated that this contradicts the maternal grandmother's statements that she had no contact with the father: "By father's statement, this shows that the maternal grandmother was being

7

dishonest and placing the child at risk by allowing the father unauthorized contact with the child." The father's statements also belie Mother's reports that she had not been with the father. The social worker concluded that the "family has continued to be dishonest with [DPSS] and place[d] the child at risk by doing so."

On the date of the section 366.26 hearing, Mother filed a section 388 petition. She requested that the order setting the hearing be vacated and a new order be made placing J.S. with Mother on family maintenance status or, alternatively, to provide her with further reunification services. Mother said she had maintained regular visits with J.S. and that she had completed counseling, a substance abuse program, and a parenting program. The requested change would allegedly benefit J.S. because she had regularly visited J.S. and "there is a bond between Mother and child." She attached certificates evidencing her attendance in therapy and the completion of the referenced programs.

The court denied the petition, stating: "At most, I have [M]other's circumstances changing. In addition, I can't make a finding that [granting the request] would be in the best interest of the minor child to grant the [petition]."

The court then proceeded to hold the section 366.26 hearing. After hearing the arguments of counsel, the court established adoption as J.S.'s permanent plan and terminated the parents' parental rights.

### III. DISCUSSION

Section 388 allows the parent of a dependent child to petition the juvenile court to change, modify, or set aside a previous order of the court. Under the statute, the parent

8

has the burden of establishing by a preponderance of the evidence that (1) there is new evidence or changed circumstances justifying the proposed change of order, and (2) the change would promote the best interest of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317; § 388, subds. (a), (b).) The decision to grant or deny the petition is addressed to the sound discretion of the juvenile court, and its denial of the petition will not be overturned on appeal unless an abuse of discretion is shown. (*In re S.J.* (2008) 167 Cal.App.4th 953, 959-960 [Fourth Dist., Div. Two].)

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.]" (*In re Stephanie M., supra,* 7 Cal.4th at p. 317, quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) Still, it is at this very point that "[s]ection 388 plays a critical role in the dependency scheme. Even after family reunification services are terminated and the focus has shifted from returning the child to his parent's custody, section 388 serves as an 'escape mechanism' to ensure that new evidence may be considered before the actual, final termination of parental rights." (*In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1506; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528.)

Here, the court's conclusion that Mother failed to establish changed circumstances was within the range of the court's discretion. The primary problem that led to the decisions to remove J.S. from the maternal grandmother and recommend the termination

9

of services was the discovery that, contrary to Mother's and the maternal grandmother's assurances, the father had been in contact with Mother, the maternal grandmother, and J.S. The problem was more than a matter of dishonesty or the lack of forthrightness in dealing with DPSS, but that Mother's willingness to let the father have contact with J.S. put the child at risk of harm and indicated Mother's failure to recognize that risk.

There is nothing in the record to indicate how the substance abuse and parenting courses that Mother refers to as evidence of her changed circumstances addressed these problems. Indeed, most or all of these courses had already been completed by the time Mother's and the maternal grandmother's deception had come to light in late March 2013. DPSS could thus reasonably conclude that although Mother was compliant with her case plan and participating in services, she had failed to benefit from the services. For the same reasons, the court acted within its discretion in finding there was no change of circumstances within the meaning of section 388.

The court's determination that the requested change would not be in J.S.'s best interest is also well within its discretion. In light of Mother's misrepresentations about her relationship with the father, the court could reasonably believe that Mother would continue her relationship with the father, thus placing J.S. at the risk of harm that gave rise to this proceeding from the outset. Granting Mother's request would also result in taking J.S. away from his three older siblings and prospective adoptive parents with whom he has developed strong bonds.

10

We conclude, therefore, that the court did not err in denying Mother's section 388 petition.

## IV.  DISPOSITION

The orders appealed from are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
J.

We concur:

RAMIREZ _____
P. J.

HOLLENHORST _____
J.